IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DIANA A. PENA,                          §
                                        §
            Plaintiff,                  §
                                        §
V.                                      §          No. 3:12-cv-2631-L-BN
                                        §
CAROLYN W. COLVIN,                      §
Acting Commissioner of Social Security, §
                                        §
            Defendant.                  §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff Diana A. Pena seeks judicial review of a final adverse decision of the

Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated

herein, the hearing decision should be reversed.

**Background**

Plaintiff alleges that she is disabled due to a variety of ailments, including heart

attack, depression, back pain, arthritis, and multiple surgeries. *See* Administrative

Record [Dkt. No. 13] ("Tr.") at 133. After her applications for disability and

supplemental security income ("SSI") benefits were denied initially and on

reconsideration, *see id.* at 41-52, Plaintiff requested a hearing before an administrative

law judge ("ALJ"), *see id.* at 63. That hearing was held on November 18, 2010. *See id.*

at 21. At the time of the hearing, Plaintiff was forty-eight years old. *See id.* at 10. She

has an eleventh grade education, *see id.* at 10, and has past work experience as a

certified nurse's aid, home health aid, and paint machine operator, *see id.* at 38.

Plaintiff has not engaged in substantial gainful activity since March 28, 2008. *See id.* at 14.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. *See id.* at 15. Although the medical evidence established that Plaintiff suffered from degenerative disc disease of the lumbar spine, the ALJ concluded that the severity of that impairment did not meet or equal any impairment listed in the social security regulations. *See id.* at 14. The ALJ also concluded that Plaintiff failed to establish that she has a severe mental impairment and characterized her depression as non-severe. *See id.* at 13-14. The ALJ further determined that Plaintiff had the residual functional capacity to perform the full range of sedentary work but could not return to her past relevant employment. *See id.* at 14-15. Given her age, education, and exertional capacity for light work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines. *See id.* at 15.

Plaintiff appealed that decision to the Appeals Council. *See id.* at 5. The Council affirmed. *See id.* at 1-4.

Plaintiff then filed this action in federal district court. *See* Dkt. No. 1. Plaintiff challenges the hearing decision on two general grounds: (1) the ALJ's determination that she does not have a severe mental impairment is not supported by substantial evidence and (2), as a result, the ALJ erred by relying on the Medical-Vocational Guidelines to determine work exists that Plaintiff can perform.

2

The undersigned recommends that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d

391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential

evaluation process that must be followed in making a disability determination:

1.    The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.    The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.    The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.    If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.    If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

See 20 C.F.R. § 404.1520(b)-(f); Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007)

("In evaluating a disability claim, the Commissioner conducts a five-step sequential

analysis to determine whether (1) the claimant is presently working; (2) the claimant

has a severe impairment; (3) the impairment meets or equals an impairment listed in

appendix 1 of the social security regulations; (4) the impairment prevents the claimant

from doing past relevant work; and (5) the impairment prevents the claimant from

doing any other substantial gainful activity."). The claimant bears the initial burden

4

of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ

5

had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

### Analysis

<u>Severity of Mental Impairment</u>

Plaintiff first contends that the ALJ failed to consider all of her severe impairments. The ALJ found that the medical evidence established that Plaintiff has severe degenerative disc diseases of the lumbar spine and non-severe depression and that she retained the functional capacity for sedentary work. *See* Tr. at 14. Plaintiff argues that the ALJ's finding that she does not have a severe mental impairment is not supported by substantial evidence and led to an improper evaluation of her residual functional capacity.[1] *See* Dkt. No. 15 at 8-10; Dkt. No. 17 at 2-5.

The ALJ determined that Plaintiff's depression was not severe based on his finding that Plaintiff's allegations concerning depression were not credible. *See* Tr. at 12-13. Plaintiff argues that the ALJ ignored substantial evidence concerning her depression from the treating physicians, consultive examiner, and State Agency medical consultant. *See* Dkt. No. 15 at 9; Dkt. No. 17 at 2-5.

---

[1] Because Plaintiff's arguments in her brief relate solely to issues relating to her mental impairment, the undersigned will review only the medical evidence relating to any such impairment.

"The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Id.* (internal quotations omitted). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Id.* (internal quotations omitted). However, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" when good cause is shown. *Id.* at 455-56 (internal quotations omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Social Security Administration ("SSA") Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion" and list factors that an ALJ must consider to assess the weight to be given to a treating physician's opinion when the ALJ determines that the opinion is not entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2). Specifically, this regulation requires consideration of:

(1) the physician's length of treatment of the claimant;

(2) the physician's frequency of examination;

(3) the nature and extent of the treatment relationship;

7

(4) the support of the physician's opinion afforded by the medical
    evidence of record;

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

*See id.* § 404.1527(c).

In *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. However, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(d) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

Here, the ALJ characterized the record as being "surprisingly devoid of much mental health treatment," *see* Tr. at 12, and containing "surprisingly little medical evidence concerning the claimant's depression or anxiety," *id.* at 13. However, the record does contain medical evidence of depression from treating physicians, consultive examiners, and a State agency medical consultant.

Plaintiff underwent a consultative psychological evaluation by Lawrence Sloan, Ph.D., in July 2009. *See id.* at 12, 333-38. Plaintiff reported to Dr. Sloan that she had suffered from depression for over twenty years. *See id.* at 12, 334. She was first treated

with Prozac, which she discontinued due to an onset of suicidal ideation. *See id.* Plaintiff had tried other medications over the years and found them not effective, and she had been on Celexa for four years, but it was not effective. *See id.* Plaintiff also told Dr. Sloan that she had a heart attack in March 2008 and began having anxiety attacks after the heart attack. *See id.* at 12, 334-35. Dr. Sloan observed that, during the evaluation, Plaintiff presented with a depressed mood and was often tearful. *See id.* at 334, 336. However, Plaintiff was fully oriented, displayed a good memory, and was able to discuss current events, and her concentration and insight appeared to be intact. *See id.* at 336-37. Dr. Sloan assessed Plaintiff with Depressive Disorder NOS (not otherwise specified) with a current GAF of 55-60[2] and diagnosed her depression as chronic but not recently severe. *See id.* at 12, 337.

A State Agency medical consultant performed a psychiatric evaluation of Plaintiff in August 2009 and diagnosed Plaintiff with Depressive Disorder NOS and Anxiety Disorder NOS with features of Panic Disorder. *See id.* at 352, 354. The medical consultant found Plaintiff to have moderate difficulties in maintaining concentration, persistence, or pace. *See id.* at 359. A mental residual functional capacity assessment found that Plaintiff had moderate limitations in the ability to understand, remember,

---

[2] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (DSM-IV"). A GAF score of 51-60 reflects some mild symptoms (such as flat affect and circumstantial speech or occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (such as having few friends or conflicts with peers or co-workers). *See id.* at 34.

and carry out detailed instructions and to accept instructions and respond appropriately to criticism from supervisors. *See id.* at 363-65. The medical consultant stated that Plaintiff "is limited by symptoms, but the impact of these symptoms does not wholly compromise [Plaintiff's] ability to function independently, appropriately and effectively on a sustained basis. Functional limitations are less than markedly impaired. The alleged severity of limiting effects from [Plaintiff's] impairments are not wholly supported by the [medical evidence of record] and other evidence in the file." *Id.* at 361.

Plaintiff was treated with medication for recurrent depression at the Stop Six Behavioral Clinic, with diagnoses ranging in severity from mild to severe.[3] *See id.* at 13, 293-96, 299-303, 497-524. In October 2009, her depression was diagnosed as severe, and she was encouraged to attend counseling. *See id.* at 523-24. On November 2, 2009, it was noted that she had feelings of depression, irritability, worthlessness, hopelessness, and passive suicidal ideation, and her depression was again diagnosed as severe. *See id.* at 516. One week later, on November 9, 2009, her depression was diagnosed as moderate, *see id.* at 513, and, in March 2010, it was diagnosed as mild, *see id.* at 509. In July 2010, Plaintiff was again diagnosed with severe depression and

---

[3] Defendant argues that evidence showing that Plaintiff stopped taking her psychiatric medications supports the ALJ's finding that Plaintiff's depression was not severe. *See* Dkt. No. 16 at 7. The ALJ, however, did not mention non-compliance with medication in his decision. *See* Tr. at 9-15. Because the ALJ's decision must stand or fall with the reasons set forth in that decision, as adopted by the Appeals Council, *see Newton*, 209 F.3d at 455, the undersigned rejects this argument for affirming the ALJ's decision.

referred for counseling. *See id.* at 506-07. In September 2010, her depression was diagnosed as moderate. *See id.* at 503. There is no evidence she was seen by a counselor.

A psychiatric discharge summary dated September 15, 2010 reports that Plaintiff was admitted into a psychiatric facility on September 11, 2010, after voluntarily appearing at the hospital emergency room alleging suicidal thoughts of overdosing on her psychiatric medications. *See id.* at 12, 551, 657-58. According to the discharge summary, Plaintiff had a twenty year history of depression that had worsened over the last few months, and she was undergoing many psychosocial stressors including difficulty finding a job, decreased sleep, anhedonia, decreased energy, decreased concentration, and poor appetite. *See id.* at 12, 551. She also claimed to have had multiple dreams about dead relatives and believed that meant she was about to die. *See id.* She was discharged on September 14, 2010 with a diagnosis of major depressive disorder, recurrent, severe, with psychotic features, and a GAF of 55. *See id.* at 12, 551, 657.

After the administrative hearing, Plaintiff underwent a consultative internal medical evaluation by Ade Adedokun. D.O. in December 2010, who was evaluating her for low back pain and arthritis. *See id.* at 10, 601-16. Plaintiff told Dr. Adedokun about her depression and anxiety, including a recent suicide attempt in which she tried to jump off a bridge in September 2010. *See id.* at 10, 602, 605, 609. Dr. Adedokun's assessment noted Plaintiff's history of depression with anxiety, suicidal ideation, and

suicidal intent, and, in his functional capacity assessment, he determined that Plaintiff was capable of performing light work. *See id.* at 10, 605-09.

The ALJ did not give the opinions of the treating physicians great weight, and he discounted the opinions of the consulting examiners and State Agency medical consultant because the ALJ did not find Plaintiff's statements to those physicians to be credible. *See id.* at 12, 13, 14. The ALJ considered Plaintiff's statements to Dr. Sloan suspect because she informed him that she had a heart attack in March 2008 and became tearful as she told him that she had a lot of problems with her heart and depression. The ALJ disbelieved Plaintiff and pointed out that her statements about a heart attack were contradicted by medical records from the March 2008 hospitalization, which show Plaintiff does not have a cardiac impairment. *See id.* at 11, 12, 229. The ALJ also discredited Plaintiff's statement to Dr. Adedokun that she had tried to commit suicide by jumping off a bridge because there was no evidence that this suicide attempt was witnessed or that authorities were called to talk Plaintiff off the bridge. *See id.* at 12. The ALJ further found the statement to be inconsistent with a prior statement made when Plaintiff had been admitted to the psychiatric facility that she was considering taking an overdose of psychiatric medication at about the same time. *See id.* The ALJ concluded that Plaintiff was attempting to build a record showing that she required psychiatric hospitalization, although her treatment in the psychiatric facility had been voluntary and she was released after only a couple of days in improved condition. *See id.* at 13. Concerning the opinions of her treating physicians, the ALJ stated simply that "there is some reference to depression," without

12

further discussion of the treating physicians diagnoses of and treatment for depression. *See id.* at 13.

An ALJ's assessment of a claimant's credibility is accorded great deference. *See Newton v. Apfel*, 209 F.3d at 459. However, in this case the ALJ's subjective doubts concerning the credibility of Plaintiff's statements to treating physicians, consultive examiners, and the State Agency medical consultant concerning her depression do not constitute good cause to reject the opinions of those physicians. All of those physicians consistently diagnosed Plaintiff with depression, albeit in differing degrees of severity at different times. The ALJ failed to consider the factors set forth in 20 C.F.R. § 404.152(c) in rejecting the opinions of Plaintiff's treating physicians and failed to properly consider the medical evidence concerning depression. Instead, the ALJ based his decision concerning the severity of Plaintiff's depression solely on the credibility of her self-reported statements to physicians. *See* Tr. at 13.

The ALJ's failure to consider the Section 404.1527 factors when rejecting these physician's opinions and diagnoses was prejudicial error. It is the ALJ's responsibility to weigh the evidence, and the undersigned is unable to say what the ALJ would have done had he weighed all relevant evidence of record. Accordingly, the undersigned recommends that the case be remanded for reconsideration of the medical evidence concerning the severity of Plaintiff's depression.

The undersigned also notes that the ALJ failed to apply the proper test to evaluate the severity of Plaintiff's depression. The ALJ correctly cites to *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), *see id.* at 13, but incorrectly states the severity

13

standard, *see id.* at 10. In *Stone*, the Fifth Circuit, concerned that the Commissioner had been applying an incorrect standard to the severity requirement when determining impairments, held that

> we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 1520(c) (1984) is used. Unless the correct standard is used, the claim must be remained to the Secretary for reconsideration.

752 F.2d at 1106. The *Stone* standard provides that "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101. In the instant case, the ALJ cited to the *Stone* decision but described a severe impairment as "one which would have more than a slight effect on her ability to engage in ... basic work-related activities." *See* Tr. at 10, 13.

While a case will not be remanded simply because the ALJ did not use "magic words," courts have remanded cases in which there is no indiction that the ALJ applied the correct standard. *See Andrews v. Astrue*, 917 F. Supp. 2d 624, 633 (N.D. Tex. 2013). However, even if the ALJ's statement of the severity standard could be considered error, the Fifth Circuit has recently made clear that harmless error analysis applies to "any error by the ALJ in not following the procedures set out in *Stone*" and that remand is not warranted where "substantial evidence supports the finding of the non-severity." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012).

14

Here, it is unclear which standard the ALJ followed in evaluating Plaintiff's impairments. Nevertheless, because the undersigned recommends that this case be remanded for consideration of the medical evidence concerning the severity of Plaintiff's depression, the undersigned also recommends that, on remand, the ALJ should both cite and apply the *Stone* standard to evaluate the severity of Plaintiff's impairments.

<u>The Medical-Vocational Guidelines</u>

Plaintiff next contends that the ALJ improperly relied on the Medical-Vocational Guidelines because she claims that she has a non-exertional impairment, specifically, severe depression. *See* Dkt. No. 15 at 10-11. At the fifth step of the sequential evaluation process, the ALJ considers the plaintiff's age in combination with her residual functional capacity, education, and work experience to determine whether the plaintiff is capable of adjusting to and performing work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1563(a) (2010); *Flores v. Astrue*, No. 5:09-cv-214-C-BG, 2010 WL 3858173, at *2 (N.D. Tex. Aug. 30, 2010), *rec. adopted*, 2010 WL 3856435 (N.D. Tex. Oct. 4, 2010). The ALJ may consult the Medical-Vocational Guidelines (the "Grid Rules") to determine whether, given the plaintiff's vocational characteristics, work exists in the national economy that the claimant can perform. *See Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983). Located in the Commissioner's regulations at appendix 2 of part 404, the Grid Rules consist of rules that direct a finding of disability when the plaintiff's residual functional capacity, age, education, and previous work experience correspond to the job requirements under a

15

particular rule. *See* 20 C.F.R., pt. 404, subpart P, app. 2. When a claimant suffers only from exertional impairments or her non-exertional impairments do not significantly affect her residual functional capacity, the ALJ may rely exclusively on the Grid Rules in determining whether there is other work available that the claimant can perform. *See* 20 C.F.R. § 404.1569 & pt. 404, subpart P, app. 2; *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The resolution of whether the ALJ could rely on the Grid Rules depends on the ALJ's determination of whether Plaintiff's depression is a severe mental impairment, which would be a non-exertional impairment. The undersigned is recommending that this case be remanded for consideration of the medical evidence concerning the severity of Plaintiff's depression. At that point, the ALJ's decision on remand as to whether Plaintiff has a severe non-exertional impairment will be determinative of this issue.

## Recommendation

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[4]

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

---

[4] By remanding this case for further administrative proceedings, the undersigned does not suggest that Plaintiff is or should be found disabled.

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 7, 2013

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE